**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

ENRIQUE DAVALOS MARRERO,

Petitioner,

v. No. 2:26-cv-01863-KG-JHR

FNU LNU, *et al.*,

Respondents.[1]

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Petitioner Enrique Davalos Marrero's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 and Supplement to the Petition (collectively, the "Petition"). [Docs. 1, 7]. Chief District Judge Kenneth Gonzales referred the Petition to me to submit proposed findings and a recommended disposition pursuant to 28 U.S.C. § 636. [Doc. 10]. United States Respondents[2] ("Respondents") filed a response [Doc. 8] and Petitioner filed a reply [Doc. 9]. Petitioner also filed an "Emergency Motion for Immediate Release from Immigration Detention." [Doc. 12 (the "Emergency Motion")].

Having reviewed the briefing, case record, and applicable law, I recommend the Court GRANT IN PART Petitioner's habeas petition and ORDER Respondents to release Petitioner under supervision. I also recommend the Court DENY Petitioner's Emergency Motion as moot.

---

[1] Respondents include Markwayne Mullin in his official capacity as Secretary of the Department of Homeland Security, Todd Blanche in his official capacity as Attorney General of the United States, Mary De Anda-Ybarra, in her official capacity as Acting ICE Director, and Warden, Otero County Processing Center where Petitioner is detained. [Doc. 4].

[2] The United States Respondents assert that the arguments in their response apply equally to the Warden, "who is detaining Petitioner at the United States' request." [Doc. 8 at 1]. For ease of reading, I will refer to the United States Respondents as "Respondents" in this Proposed Findings and Recommended Disposition.

## I. BACKGROUND

Petitioner entered the United States from Cuba without inspection on or around October 7, 1993. [Doc. 8-6]. An immigration judge ordered him removed from the United States on May 24, 2000, and the order became final on June 23, 2000. [Docs. 8 at 3; 8-17 at 1]. There are no pending proceedings related to that order. [Doc. 8 at 4]. Petitioner was detained from October 10, 2000, to September 17, 2001 (approximately 11 months), then released under an order of supervision. [Doc. 1 at 9]. He was detained again from August 10, 2009, to September 24, 2009 (approximately 1.5 months), before he was again released under supervision. [*Id.*] Defendants state that Petitioner was released under supervision because "removal efforts did not result in immediate deportation." [Doc. 8 at 3].

On December 2, 2025, officers stopped Petitioner for a traffic violation and determined that there was an order for his removal. [Doc. 8 at 3]. The Department of Homeland Security issued a Warrant of Removal/Deportation directing officers to take Petitioner into custody and remove him from the United States based on the May 2000 order. [*Id.*] Petitioner was then detained in Florida from December 2, 2025, to April 26, 2026, when he was transferred to the Otero County Processing Center in Chaparral, New Mexico, where he remains. [Docs. 1 at 9; 8 at 3; 12]. The Otero County Processing Center is a southwest border field office that can effect third county removals to Mexico via the Santa Teresa, New Mexico port of entry. [Doc. 8-17 at 2].

Defendants assert that, on January 10, 2026, ICE provided Petitioner with a "Notice of Removal" stating that that it intended to remove him to Mexico. [Doc. 8 at 9; 8-14]. Although Respondents assert that Petitioner was "served" with a Notice of Removal to Mexico in January 2026, Petitioner disputes that he ever received such notice. [Docs. 7, 8]. The copy of the Notice provided by Respondents does not include a signature line for the detainee and does not include

Petitioner's signature or fingerprint, although it does reflect that an ICE official certified that he read it to Petitioner and gave him a copy in person. [Doc. 8-14]. Respondents do not allege that Petitioner refused to sign the Notice of Removal to Mexico. [Doc. 8 at 4]. The Notice of Removal does not state that the detainee may request a hearing. [Doc. 8-14].

On June 3, 2026, Enforcement and Removal Operations ("ERO") requested an "allocation" for Petitioner on a removal "mission" to Mexico. [Doc. 8 at 2]. On June 19, 2026, ERO again requested an allocation for Petitioner for removal to Mexico. [*Id.*]

In a declaration, Deportation Officer Michael A. Carroll described some of the ERO procedures for removal of detainees. [Doc. 8-17]. He stated that "[t]he petitioner will receive a Notice of Removal to Mexico 24 hours prior to his transfer to the relevant field office" and that "[t]he receiving ERO field office will then notify Mexico's Instituto Nacional de Migracion (INM) of the petitioner's upcoming removal to Mexico." [*Id.*] He further states, "The steps taken by ERO have been unsuccessful due to the Government of Cuba denying repatriation of the Petitioner to Cuba," but "ERO has produced a viable third country removal alternative to Mexico based on the CVNH [sic] agreement between the United States and Mexico to accept Cuban nationals denied repatriation to Cuba." [*Id.*] In addition, "ERO Headquarters is also actively seeking alternative third country removal options for Cuban nationals denied repatriation to Cuba by the Government of Cuba." [*Id.*] Finally, he states that "[a] tentative date of departure cannot currently be attained, due to case load and numerous daily third country removals to Mexico, however, ERO can coordinate the removal to Mexico within approximately one to four weeks once accepted for a removal mission . . . ." [*Id.*]

Meanwhile, Petitioner filed his § 2241 habeas corpus petition on June 8, 2026. [Doc. 1]. He filed a supplement to his Petition on June 23, 2026. [Doc. 7]. In the Petition, Petitioner states

four grounds for relief, which I have consolidated into two. [Doc. 1]. First, he contends that his continued detention is unlawful under *Zadvydas v. Davis* because he has been detained longer than the presumptively reasonable six months and his removal to Cuba or any other county is not significantly likely to occur in the reasonably foreseeable future. 533 U.S. 678 (2001). Second, Petitioner argues his continued detention "violates Petitioner['s] right to substantive due process through a deprivation of the core liberty interest in freedom from bodily restraint [because] the Due Process Clause of the Fifth Amendment requires that the deprivation of Petitioner['s] liberty be narrowly tailored to serve" the Government's interest. [*Id.*]

The Respondents responded on June 24, 2026, [Doc. 8], and Petitioner replied on July 6, 2026. [Doc. 9]. On September 10, 2026, Petitioner filed an "Emergency Motion for Immediate Release from Immigration Detention." [Doc. 12]. As of the date of his Petition, Petitioner had been in continuous detention for six months and six days (December 2, 2025, to June 8, 2026), although the total time Petitioner has been in detention since 2009 is approximately 18 months.

## II. APPLICABLE LAW

### A. Jurisdiction

The Constitution guarantees that "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88). The Court therefore has jurisdiction over Petitioner's Petition, which seeks relief under § 2241.

**B. Detention of Aliens Subject to Final Removal Orders under 8 U.S.C. § 1231 and *Zadvydas.***

When an alien is ordered removed, the Government must remove him within a ninety-day "removal period." 8 U.S.C. § 1231(a)(1)(A).[3] If the Government fails to remove the alien before the period expires, it must release him on supervision pending removal. *Id.* § 1231(a)(3). However, the Government may continue detaining someone beyond the removal period if he was found inadmissible, deportable on specified grounds, a flight risk, or a danger to his community. *Id.* § 1231(a)(6).

Section 1231(b) governs the countries to which aliens may be removed and provides that noncitizens should be removed to "(i) the country of which the noncitizen is a citizen, subject, or national; (ii) the country in which the noncitizen was born; or (iii) the country in which the noncitizen has a residence." *Santacruz Macias v. Baltazar*, No. 1:26-CV-01046-SKC, 2026 WL 865174, at *2 (D. Colo. Mar. 30, 2026); § 1231(b)(1)(C)(i)-(iii). "If removal to any of those countries is impracticable, inadvisable, or impossible, then removal can be to any country with a government that will accept the noncitizen into its territory." *Santacruz Macias*, 2026 WL 865174, at *2; § 1231(b)(1)(C)(iv). However, noncitizens may not be removed to a country "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion" unless certain criteria are met. § 1231(b)(3)(A), (B). *See Ahrach v. Baltazar*, No. 25-CV-03195-PAB, 2025 WL 3227529, at *3 (D. Colo. Nov. 19, 2025).

[3] The removal period begins on the latest of the date the removal order became administratively final, the date of a court's decision upon judicial review of the removal order if a stay of removal was entered, or the date the alien is released from detention or confinement unless the detention or confinement was for an immigration process. § 1231(a)(1)(B).

In *Zadvydas*, the Supreme Court addressed the ambiguity around the length of detention § 1231(a)(6) allows. *Zadvydas*, 533 U.S. 678. Although *Zadvydas* originally addressed aliens who had entered lawfully but were subsequently found deportable, *id*. at 682, the Supreme Court later extended *Zadvydas* to inadmissible aliens detained under § 1231(a)(6) as well. *Clark v. Martinez*, 543 U.S. 371, 378 (2005). The *Zadvydas* Court found that a reading of § 1231 to permit "indefinite detention of an alien would raise a serious constitutional problem" because the Fifth Amendment's protection of freedom from physical restraint extends to all people—whether citizen, resident, or alien—who entered into the United States. *Id.* at 690, 693. And since immigration proceedings are civil, due process prohibits detention as a punitive measure. *Id.* at 690. However, the Government can civilly detain aliens to prevent flight from removal proceedings or danger to public safety. *Id.* The Court therefore reasoned that, absent a showing of likely flight or danger to the public, indefinite detention of aliens violates the Constitution. *Id.* at 696.

The Court determined that § 1231(a)(6) only permits detention for as long as "reasonably necessary to bring about [an] alien's removal from the United States." *Id.* at 689, 699. To determine what constitutes "reasonably necessary" detention, the Court established a case-by-case test. *Id.* at 699-701. First, the Court held that detention for six months or less is presumptively reasonable. *Id.* at 701. If detention continues beyond six months, the alien may make a prima facie showing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future . . . ." *Id.* Then, to justify continued detention, the Government must produce evidence sufficient to rebut that showing. *Id.*

"Courts typically consider the cumulative time spent in detention when evaluating a habeas claim challenging detention as unreasonable per *Zadvydas*." *Dudyrev v. Mullin*, No. 1:26-CV-00767-SMD-JHR, 2026 WL 1983210, at *3 (D.N.M. July 8, 2026); *Jimenez Chacon v. Lyons*, 811

F. Supp. 3d 1299, 1309 (D.N.M. 2025) (collecting cases); *Dao v. Rios*, No. 2:26-CV-0370 JB/DLM, 2026 WL 1103119, at *6 (D.N.M. Apr. 23, 2026). The longer detention lasts, the shorter the "reasonably foreseeable future" must be to justify continued detention. *Zadvydas*, 533 U.S. at 701.

Petitioners may meet their burden with evidence that there is an unexplained lack of progress shown by the Government in securing removal. *See, e.g.*, *Ndou v. Noem*, 833 F. Supp. 3d 1192, 1198-1199 (D.N.M. 2026) (petitioner met his burden where he pointed out that the respondents had not provided "any proof of travel document issuance, consular cooperation, scheduled removal flights, or any concrete removal arrangements"); *Santacruz Macias*, 2026 WL 865174, at *3 (petitioner met his burden where, in five years since the final order of removal to Cuba, respondents had not removed him nor did they provide documents for removal to another country); *Carlos Cadogan Mcnaught v. Mary De Anda-Ybarra, et al.,* No. 2:26-CV-01577-KG-DLM, 2026 WL 2253873, at *2 (D.N.M. Aug. 4, 2026) (the petitioner met his burden where the "Government ha[d] not shown that a third country has agreed to accept [him], nor have they provided evidence of a travel document request, scheduled flight, or a timeline for removal).

Once a petitioner meets his or her burden, the Government must show that it has taken concrete steps that have made progress toward deportation and are likely to effectuate deportation: good faith efforts are not enough. *Zadvydas,* 533 U.S. at 702. *See Fadwa v. Lyons*, No. 25-CV-03660-PAB, 2025 WL 3525026, at *6 (D. Colo. Dec. 9, 2025) (stating that "the government must actually make legitimate progress towards removal"). For example, where the Government seeks to deport a detainee to a third country, the Government must show that it has taken steps to obtain the necessary documents for the detainee's travel to that country and that the third country will likely accept the detainee. *See, e.g.*, *Le Nguyen v. Bondi*, No. 2:25-CV-01198 KWR-JMR, 2026

WL 892491, at *10 (D.N.M. Mar. 31, 2026) (the Government did not meet its burden where travel documents were requested but not obtained and there was no evidence that Vietnam could accept the detainee); *Santacruz Macias*, 2026 WL 865174, at *3–4 (no travel documents provided); *Fadwa*, 2025 WL 3525026, at *6 (Government did not meet its burden where, while ICE requested travel documents from Israel, there was no evidence Israel responded, and ICE did not provide a plan for deporting the detainee to Israel even if travel documents were provided); *Ruiz-Acosta v. Cent. Valley Annex*, No. 1:26-CV-04371-DAD-JDP (HC), 2026 WL 1846727, at *3 (E.D. Cal. June 26, 2026) (the Government did not meet its burden because it "failed to indicate what steps the government has taken to effectuate petitioner's removal to Mexico or that Mexico is likely to accept this petitioner specifically").

If the Government does not meet its burden under this analysis and the court therefore determines that continued detention violates the INA under Zadvydas, the petitioner is entitled to immediate release. *Zadvydas*, 533 U.S. at 701; *Jimenez Chacon*, 811 F. Supp. 3d at 1313.

## III. <u>ANALYSIS</u>

I recommend the Court find that Petitioner's detention violates § 1231(a)(6) under *Zadvydas*. I therefore recommend the Court order Respondents to release Petitioner under supervision. I also recommend the Court find it is unnecessary to address Plaintiff's substantive and procedural due process arguments.

The parties do not dispute that this Court has jurisdiction over the Petition, that § 1231 and *Zadvydas* govern Respondents' authority to detain Petitioner, that the ninety-day removal period has expired, or that detention has extended beyond the presumptively reasonable six-month period. *See* [Docs. 1, 8]. Thus, Petitioner's *Zadvydas* claim hinges on whether there is a significant likelihood of removal in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701.

Respondents argue that Petitioner "fails to satisfy the dispositive requirement for relief: he cannot show that there is no significant likelihood of removal in the reasonably foreseeable future." [Doc. 8 at 1]. Respondents overstate Petitioner's burden. Petitioner need only show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future . . . ." *Zadvydas,* 533 U.S. at 701. If he does so, then *Respondents* bear the burden to produce evidence that removal is significantly likely in the reasonably foreseeable future. *Id.*[4]

As of the time of this recommended disposition, ICE has detained Petitioner for 18 months in total, or nearly 12 months past the presumptively reasonable period. [Doc. 1 at 9]. Respondents argue that the history of Petitioner's detention is irrelevant and that the Court should only assess the prospects of removal. [Doc. 8 at 8]. Respondents are correct that the Court's analysis must focus on their efforts to remove Petitioner in a reasonable period. But the cumulative duration of Petitioner's detention is relevant because the longer a petitioner has been detained, the shorter the "reasonably foreseeable future" must be to justify continued detention. *Zadvydas,* 533 U.S. at 701.

With these principles in mind, I recommend finding that Petitioner has met his burden. The record shows that Petitioner was twice detained and released under an order of supervision because ICE could not remove him within a reasonable period. [Doc. 8-7 (2016 Order of Supervision); 8-8 (2015 Order of Supervision)]. Since then, he has been in continuous custody for over six months and there is no evidence, nor do Respondents allege, that Petitioner has refused to cooperate with

---

[4] Some courts have held that "that the burden-shifting scheme of *Zadvydas* is only applicable to those noncitizens who had been detained and never released following a final order of removal" and that "[w]here. . . [the] petitioner was issued a final order of removal, detained, and subsequently released and then redetained, "it is [ICE's] burden to show a significant likelihood that the alien may be removed" pursuant to 8 C.F.R. § 241.13. *Martinez v.* Bondi, No. 1:25-CV-01633-EFB (HC), 2025 WL 3650477, at *3 (E.D. Cal. Dec. 16, 2025) (collecting cases); *see Zadvydas*, 533 U.S. at 701. Given the parties' arguments and my recommended finding that Respondents bear a burden here because Petitioner met his burden, the Court need not address whether Respondents' burden arises under *Zadvydas* or § 241.13.

removal efforts. Even though it first informed Petitioner that it intended to remove him to Mexico in January 2026, ICE has not yet been successful in doing so. *See Jimenez Chacon*, 811 F. Supp. 3d at 1310 (holding that the petitioner met his burden where "the government ha[d] tried but failed for over six months to secure [the petitioner's] removal to a third country").

I further recommend finding that Respondents have not met their burden to show with evidence that Petitioner is likely to be removed with the reasonably foreseeable future. Respondents argue that they have taken "concrete steps" to remove Petitioner, including (1) moving Petitioner to Otero County Processing Center near the Mexico border, (2) giving Petitioner a Notice of Removal to Mexico, (3) requesting "allocation for a third county removal mission to Mexico per current agreement with Government of Mexico[,]" on June 3, 2026, and (4) making a "second request for allocation on a third country removal mission to Mexico" 16 days later. [Docs. 8 at 2; 8-17]. They assert that once Mexico accepts Petitioner for a removal mission, he can be removed within "one to four weeks." [*Id.*] Respondents also state that DHS may "remove aliens subject to final orders of removal to alternative countries, including another country whose government will accept the alien." [Doc. 8-17 at 2]. Officer Carroll also averred that Mexico is a "viable third county removal alternative . . . based on [an] agreement between the United States and Mexico to accept Cuban nationals denied repatriation to Cuba." [Doc. 8-17 at 2].

This evidence is not sufficient to show that Petitioner is significantly likely to be removed within the reasonably foreseeable future. First, Respondents do not explain why they did not make requests for "allocations" on removal missions to Mexico until six months after detaining Petitioner in December 2025 or why their requests were twice unsuccessful. Without an explanation, the Court cannot assess whether the reasons for delay or denial of those allocations have been eliminated or will be resolved in the reasonably foreseeable future.

Second, although removal appears to hinge on Petitioner being "accepted" for a removal mission, Respondents do not provide evidence that Mexico is likely to accept Petitioner. That there is a general agreement between the United States and Mexico allowing deportation of some Cuban nationals to Mexico does not, without more, show that Mexico will accept Petitioner in the reasonably foreseeable future. *See Garcia v. Warden, Cent. Valley Annex*, No. 1:26-CV-04659-DJC-JDP, 2026 WL 2254380, at *2 (E.D. Cal. Aug. 4, 2026) ("The bare existence of a standing agreement between the United States and Mexico, especially where [the p]etitioner does not consent to such a removal, is not sufficient to rebut [petitioner's] initial showing that removal is not reasonably foreseeable."). In fact, because Respondents do not allege that Petitioner himself has blocked removal[5] or provide any reason why Petitioner was not deported in June 2026, the two failed attempts to deport Petitioner to Mexico suggest that Mexico has twice *rejected* Petitioner. In addition, Petitioner disputes that ICE gave him a Notice of Removal. [Doc. 9 at 1]. But even if ICE did give him the Notice of Removal, the evidence in the record does not show whether Petitioner accepted or acknowledged it. *See Abiodun v. Mukasey*, 264 F. App'x 726, 729 (10th Cir. 2008) (noting that the "main reason [the petitioner] still remains in the United States is his repeated court challenges to removal and refusal to cooperate with ICE officials in obtaining a Nigerian passport and other necessary travel documents[, as well as his] refus[al] to accept or acknowledge ICE Form I–229(a), which is required by ICE officials to assist in removing an unlawful alien"). [Doc. 8-14]. Furthermore, Officer Carroll stated in his declaration that "the petitioner will receive a Notice of Removal to Mexico 24 hours prior to his transfer to the relevant field office." [Doc. 8-17 at 2]. But that sequence did not occur here: Respondents contend that ICE gave Petitioner a

---

[5] In addition, Officer Carroll states in his declaration that, "*If* [P]etitioner fails to comply with removal efforts, ERO will document and proceed accordingly." [Doc. 8-17 at 3 (Emphasis added.)]. This statement implicitly suggests that Petitioner has complied with removal efforts thus far.

Notice of Removal to Mexico in January 2026 and transferred him to Otero County Processing Center in April 2026, approximately four months later. [*Id.*] Rather than showing that the Government has made progress toward removal, these facts suggest that the repeated efforts thus far have been unsuccessful. Without further evidence, the record is insufficient to show that similar efforts to remove Petitioner to Mexico are likely to be successful in the reasonably foreseeable future, particularly considering Petitioner's nearly 18 months in detention.

Indeed, Respondents acknowledge that the record does not "establish[] that Petitioner could necessarily be removed to Mexico immediately without any additional procedures that may be required." [Doc. 8 at 2 fn 2]. They further note that the record does not show whether "Petitioner affirmatively disclaimed any fear of removal to Mexico or whether any Mexico-specific fear process was completed or waived." [*Id.*] These concessions are critical: Without knowing whether additional procedures are required before Petitioner can be removed to Mexico, the Court cannot assess whether such procedures are likely to be completed in the foreseeable future. *See Ruiz-Acosta*, 2026 WL 1846727, at *3 (noting that an ICE officer stated in a declaration that "the Mexican government only accepts individual who *consent* to removal there" and holding that the government's representations that it had served the petitioner with a notice of removal and driven the petitioner to the Mexican border were insufficient to show that removal was likely in the foreseeable future where the petitioner refused to be removed to Mexico); *Santacruz Macias*, 2026 WL 865174, at *2 (under certain circumstances, "removal can be to any country with a government that will accept the noncitizen into its territory" (citing 1231(b)(1)(C)(iv))).

Third, that Respondents are "actively seeking alternative third county removal options for Cuban nationals denied repatriation to Cuba by the Government of Cuba" does not show that Petitioner is likely to be removed in the reasonably foreseeable future. *See Salazar-Martinez v.*

*Lyons*, No. 2:25-CV-00961-KG-KBM, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025) ("Allowing the Government to exhaust all potential countries would effectively result in unconstitutional indefinite detention."); *Mcnaught,* 2026 WL 2253873, at *2 (assertions that the Government is "actively working on removal to a third country over than Mexico . . . were insufficient to demonstrate that there is a significant likelihood of removal in the reasonably foreseeable future").

In addition to his *Zadvydas* claim, Petitioner argues that his continued detention violates his "right to substantive due process through a deprivation of the core liberty interest in freedom from bodily restraint" because his detention is not "narrowly tailored to" the purpose of detention. [Doc. 1 at 7]. Given the proposed findings and recommended disposition of Petitioner's *Zadvydas* claim, I recommend the Court decline to reach this claim. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (finding it unnecessary to address an additional claim in a habeas petition after granting full relief on one claim because "any relief [petitioner] could obtain on that claim would be cumulative"); *Scott v. Mullin*, 303 F.3d 1222, 1224 (10th Cir. 2002) (declining to address the remaining claims in a habeas petition after already granting habeas relief on one claim); *Munoz Teran v. Bondi*, No. 2:25-CV-01218-KWR-SCY, 2026 WL 161527, at *7 (D.N.M. Jan. 21, 2026) (declining to address due process claim where the court determined that the petitioner was entitled to habeas relief on another ground).

## IV. CONCLUSION

I recommend the Court find that, although Respondents have taken some concrete steps toward Petitioner's removal, their efforts have been unsuccessful, and Respondents have not shown that further efforts are likely to result in Petitioner's removal in the reasonably foreseeable future. Therefore, I recommend the Court GRANT IN PART Petitioner's habeas petition [Doc. 1].

Specifically, I recommend the Court GRANT Petitioner's Petition as to his claim of a violation of § 1231, release him under supervision, and decline to address Petitioner's remaining claims. Given these recommendations, I also recommend the Court DENY as moot Petitioner's "Emergency Motion for Immediate Release from Immigration Detention." [Doc. 12].

HON. JERRY H. RITTER
United States Magistrate Judge

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**